[Cite as *In re A.C.*, 2015-Ohio-4351.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: A.C.

C.A. No.      27646

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.      2014 CN 00102

DECISION AND JOURNAL ENTRY

Dated: October 21, 2015

HENSAL, Presiding Judge.

{¶1}  Joshua Westfall appeals a judgment of the Summit County Court of Common Pleas, Probate Division, that ordered his daughter A.C.'s name to be changed.  For the following reasons, this Court affirms.

I.

{¶2}  In 2007, K.C. gave birth to A.C.  DNA testing later established that Mr. Westfall is A.C.'s biological father.  In June 2008, children services removed A.C. from K.C.'s care and placed her with Mr. Westfall's half-brother Shawn McClellan, who lived in Stark County.  In 2010, a probate court granted Mr. McClellan legal custody of A.C.  Mr. Westfall consented to the legal custody determination because, although he visited A.C. when he was able, he was still working on getting his life together.  In 2012, K.C. was sentenced to life in prison for murder.

{¶3}  In addition to raising A.C., Mr. McClellan has two sons who are older than A.C.  According to Mr. McClellan, over time A.C. began noticing that she was the only member of the

household with a different last name. She, therefore, began asking Mr. McClellan whether she could change it. Around that time, the McClellans moved to Summit County so Mr. McClellan told her that they could not do anything about her name until they had lived in their new home for a year. When a year passed and A.C. was still interested in changing her name, he submitted an application on her behalf.

{¶4} Upon learning about the application, Mr. Westfall objected to it. On June 30, 2014, a magistrate held a hearing on the application. Following the hearing, the magistrate authorized Mr. Westfall to submit his own application for change of name, which he did. K.C. wrote a letter in support of Mr. Westfall's application. After meeting with A.C. in camera, however, the magistrate ruled that it was in A.C.'s best interest to change her last name to McClellan. Mr. Westfall objected to the magistrate's decision, but the probate court overruled his objections and adopted her decision. It subsequently entered an order changing A.C.'s name. Mr. Westfall has appealed, assigning three errors.

II.

ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED WHEN IT RULED THAT THE COURT PERFECTED SERVICE ON THE BIOLOGICAL FATHER, JOSHUA WESTFALL, PURSUANT TO CIV.R. 73(E)(3), (4), (5), AND (6).

{¶5} Mr. Westfall argues that the probate court's judgment is invalid because he did not receive proper notice of the name change hearing. Revised Code Section 2717.01(B) provides that, if an application for change of name is made on behalf of a minor, "notice of the hearing shall be given to the parent or parents not consenting by certified mail, return receipt requested." Mr. Westfall notes that the court attempted to notify him by certified mail, but sent

the notice to the wrong address. He also argues that he did not waive notice of the hearing in writing. R.C. 2717.01(B).

{¶6} Although Mr. Westfall may not have affirmatively waived notice of the hearing, we conclude that he has forfeited his lack of notice argument. *See State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, ¶ 23 (explaining the difference between waiver and forfeiture). Notice requirements ensure that a court has personal jurisdiction over a child's parents. *In re A.M.*, 9th Dist. Summit No. 26141, 2012-Ohio-1024, ¶ 13. "Unlike subject matter jurisdiction, the issue of personal jurisdiction is forfeited without timely objection." *Id.* "To be timely, an objection to a defect in service must be raised 'through the first pleading, motion, or appearance in the trial court.'" *In re L.W.*, 9th Dist. Summit Nos. 26861, 26871, 2013-Ohio-5556, ¶ 9, quoting *In re J.P.*, 9th Dist. Summit No. 23937, 2008-Ohio-2157, ¶ 7.

{¶7} Even though the probate court's attempt to serve Mr. Westfall by certified mail failed, Mr. Westfall nevertheless learned about Mr. McClellan's application, filing an "Objection to Name Change" three weeks before the hearing on the application. In his objection, Mr. Westfall did not argue that he had not been properly notified about the hearing. He also attended the hearing with counsel and testified against the application, but again did not argue that he received improper notice. We, therefore, conclude that he forfeited his improper-notice argument. Mr. Westfall's first assignment of error is overruled.

ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED WHEN IT ADOPTED THE MAGISTRATE'S DECISION, ITS CONCLUSIONS, FINDINGS, AND RECOMMENDATIONS AS THE COURT'S OWN.

{¶8} Mr. Westfall next argues that the probate court incorrectly adopted the magistrate's findings of fact and conclusions of law. According to Mr. Westfall, the court did

not conduct a de novo review of the magistrate's decision and it incorrectly agreed with the magistrate that it is the best interest of A.C. to change her name.

**{¶9}** Regarding the probate court's review of the magistrate's decision, Civil Rule 53(D)(4)(d) provides that, if a party files timely objections to a magistrate's decision, the court shall rule on the objections after "undertak[ing] an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law." "The independent review that is required of the trial court has two components: (1) whether, with respect to the objected matters, the magistrate properly determined the factual issues before it, and (2) whether the magistrate appropriately applied the law to those factual determinations." *Lakota v. Lakota*, 9th Dist. Medina No. 10CA0122-M, 2012-Ohio-2555, ¶ 14.

**{¶10}** Mr. Westfall argues that, even though the probate court wrote that it had made its own independent review of the record, the court gave improper deference to the magistrate's decision. We note, however, that Rule 53(D)(4)(d) only requires the trial court to undertake an independent review "as to the objected matters." Civ.R. 53(D)(4)(d). Mr. Westfall has not demonstrated that there is a correlation between the objections he made and the language in the trial court's judgment that, according to him, indicates it gave the magistrate's decision an improper level of deference. To the extent a correlation could be made, we will not develop such an argument for him. *See State v. Davis*, 9th Dist. Summit No. 26995, 2014-Ohio-5260, ¶ 14.

**{¶11}** Regarding the probate court's best interest determination, Revised Code Section 2717.01(A)(3) provides that, following a proper application, the probate court may order a name change for "reasonable and proper cause." "[W]hen deciding whether to permit a name change for a minor child[,] * * * [the] court must consider the best interest of the child in determining

whether reasonable and proper cause has been established." *In re Willhite*, 85 Ohio St.3d 28, 32 (1999). To determine the best interest of the child, the court should consider:

> the effect of the change on the preservation and development of the child's relationship with each parent; the identification of the child as part of a family unit; the length of time that the child has used a surname; the preference of the child if the child is of sufficient maturity to express a meaningful preference; whether the child's surname is different from the surname of the child's residential parent; the embarrassment, discomfort, or inconvenience that may result when a child bears a surname different from the residential parent's; parental failure to maintain contact with and support of the child; and any other factor relevant to the child's best interest.

*Id*. If the probate court has considered the appropriate factors, we will not substitute our judgment for its judgment absent an abuse of discretion. *In re Savers*, 9th Dist. Summit No. 19797, 2000 WL 1124068, *3 (Aug. 9, 2000); *see In re Willhite* at 32-33 (analyzing de novo whether there was reasonable and proper cause to change the child's name when the trial court failed to consider the child's best interests).

{¶12} The probate court found that allowing A.C. to change her last name to McClellan would make her name consistent with her legal custodians and help her identify with the only family she has ever known. It found that A.C. is an intelligent girl who understood why she was in court and could clearly explain why she wanted to change her name, which were good reasons. It also found that, although Mr. Westfall had provided financial support for A.C., he admitted that he had failed to maintain visitation with her.

{¶13} Mr. Westfall argues that, contrary to the probate court's finding, Mr. McClellan never testified that he thought it was in A.C.'s best interest to change her last name to McClellan. Instead, he testified that he had filed the application only because A.C. requested it. Mr. Westfall also argues that the name change will further disassociate A.C. from him. He asserts that he has gotten his life together and would like to establish a relationship with A.C. Mr.

Westfall also argues that he has wanted to change A.C.'s last name to Westfall for some time, but thought that he could not because Mr. McClellan misled him about the effect of the legal custody determination. He further argues that the probate court's best interest finding is incorrect because A.C.'s mother agrees that her last name should be changed to Westfall instead of McClellan.

{¶14} Mr. Westfall's arguments are not persuasive. Regarding Mr. McClellan's testimony, when Mr. McClellan was asked why he thought it was in A.C.'s best interest to change her name, he answered that it was because her last name was tarnished. That is consistent with the probate court's findings. The fact that he later said that he would not have moved to change A.C.'s name if she had not asked him to did not undermine his assessment of her best interest.

{¶15} Regarding Mr. Westfall's diassociation argument, we note that A.C. already did not share his last name. Mr. Westfall has not demonstrated how changing her name to McClellan would "further disassociate" A.C. from him. We also note that the probate court's decision does not affect custody of A.C. or any of Mr. Westfall's visitation rights. Regarding Mr. Westfall's argument that Mr. McClellan misled him into thinking that he could not apply for a name change, in light of the fact that the court allowed him to file a motion, which it considered, he has failed to show any prejudice from Mr. McClellan's actions.

{¶16} Regarding A.C.'s mother's wishes, we note that whether a parent believes it is in a child's best interest to change a child's name is not a factor that was specifically listed by the Ohio Supreme Court in *Willhite*. Even if K.C.'s wishes were one of the "other factors" relevant to the best interest determination, they were only one factor. It was for the probate court to assess the weight her opinion should receive given the history of her relationship with A.C.

{¶17} Upon review of the record, we conclude that the probate court considered each of the specified best interest factors when it determined whether to change A.C.'s last name. In light of the amount of time that A.C. has been raised by the McClellans and her close connection to their children, we cannot say that the court abused its discretion when it concluded that a name change is in A.C.'s best interest. *But see In re Willhite*, 85 Ohio St.3d at 33 (recognizing that a combined surname is a solution that recognizes both party's legitimate claims and threatens neither's rights). Mr. Westfall's second assignment of error is overruled.

ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED WHEN IT ENTERED ITS JUDGMENT ORDER
APPROVING THE MINOR CHILD'S NAME TO BE CHANGED TO [A.C.].

{¶18} In his third assignment of error, Mr. Westfall argues that the probate court erred when it entered a "Judgment Order" ordering A.C.'s name changed. In support of this assignment of error, Mr. Westfall repeats the improper-notice and best-interest arguments that he raised with respect to his other assignments of error. For the reasons explained in resolving those assignments of error, Mr. Westfall's third assignment of error is overruled.

III.

{¶19} Mr. Westfall's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Probate Division is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

 

JENNIFER HENSAL
FOR THE COURT

WHITMORE, J.
MOORE, J.
CONCUR.

APPEARANCES:

TRACEE D. HILTON-RORAR, Attorney at Law, for Appellant.

THOMAS T. MULLEN, Attorney at Law, for Appellee.